### UNITED STATES of America, Plaintiff-Appellee,

### v.

### Elmo SENIOR, Defendant-Appellant.

### No. 12622.

United States Court of Appeals Seventh Circuit.

Feb. 8, 1960.

Myer H. Gladstone, Chicago, Ill., for appellant.

Robert Tieken, U. S. Atty., Chicago, Ill., Glenn R. Heyman, John Peter Lulinski, Asst. U. S. Attys., Chicago, Ill., of counsel, for appellee.

Before SCHNACKENBERG and CASTLE, Circuit Judges, and MERCER, District Judge.

SCHNACKENBERG, Circuit Judge.

Elmo Senior, defendant, has appealed from a judgment of the district court, based on the verdict of a jury, finding him guilty as charged in an indictment alleging violations of § 4705(a), Internal Revenue Code of 1954, 26 U.S.C.A. § 4705(a), and 21 U.S.C.A. § 174, as amended by the Narcotics Control Act of 1956, and 18 U.S.C.A. § 2. Terms of imprisonment and fines were imposed.

1. Defendant contends that the verdict and the judgment are manifestly against the evidence. With this contention in mind, we have examined the evidence in detail and find that it supports the verdict of the jury and the judgment thereon.

2. At the close of the government's case, defendant made an oral motion that the government be directed to elect, "with respect to counts 2 and 6, as to which of the acts charged therein they will seek conviction". The court denied the motion.

Defendant points out that he, with one Kim Laurie, was named in counts 1, 2, 5 and 6, and that count 7 charged both with conspiracy to sell, conceal and facilitate the transportation and concealment of certain narcotics. He also states that in count 3 Laurie was charged with the sale of heroin to Arthur Lewis on January 15, 1959, and in count 4, she was charged with concealing, selling and facilitating the transportation and concealment of heroin on January 15, 1959. He states that he was not named in either of counts 3 or 4.

Defendant also moved to dismiss the indictment, or, in the alternative, to compel the government to elect the counts on which it would seek a conviction, which motion was denied.

There was no misjoinder of defendants or offenses. 18 U.S.C.A. rule 8(b).

Defendant made no motion for severance. Kleven v. United States, 8 Cir., 240 F.2d 270.

There was no error in the court's rulings on the aforesaid motions which defendant did make.

3. Defendant called Kim Laurie as his witness. At the conclusion of her cross-examination, the prosecuting attorney asked her:

"Q. Are you the same Kim Laurie that has been convicted in 59 CR 79 in the Northern District of Illinois? A. Yes, I am the same Kim Laurie.

"Mr. Gladstone: That is this case?

"Mr. Heyman: That is this case.

"Mr. Gladstone: Yes.

"By Mr. Heyman:

"Q. And you were sentenced to five years? A. Yes.

"Mr. Heyman: I have no further questions."

Before us, defendant urges with great insistence that serious error resulted from the following proceedings which thereupon took place:

"The Court: In that case, Miss Laurie,—was that in this court-room?

"The Witness: Yes.

"The Court: One of the crimes of which you were convicted was conspiring, combining, confederating and agreeing together, that is to say, you and Elmo Senior, to unlawfully and fraudulently sell, conceal and facilitate the transportation and concealment after unlawful importation into the United States of various quantities of heroin hydrochloride and cocaine which are narcotic drugs, knowing the same to have been so unlawfully imported to the United States contrary to law in violation of Section 174, Title 21 of the U.S.C.[A.] as amended by the Narcotic Control Act of 1956.

"You were convicted of that charge?

"Mr. Gladstone: Just one moment. I am objecting to that question by the Court, your Honor.

"The Court: You will have to use a better tone to me.

"Mr. Gladstone: Beg pardon?

"The Court: Don't 'Just one moment' this Court, Mr. Gladstone.

"Mr. Gladstone: That was 'One moment' to her, not to you, your Honor. I didn't want her to answer before I—

"The Court: I will determine whether she answers, sir.

"Mr. Gladstone: But I am objecting to the question.

"The Court: This is your witness. You are not running the courtroom.

"Mr. Gladstone: I am not trying to, your Honor. I object to that statement. I wouldn't try to.

"The Court: If you want to make an objection, you make it.

"Mr. Gladstone: That is all I said, I am objecting to that question.

"The Court: I will overrule your objection.

"Mr. Gladstone: All right.

"The Court: You may answer. Is that the crime, among others, that you were convicted of in this court-room?

"The Witness: Yes, before you.

"The Court: All right, you have answered the question."

Thereupon counsel for defendant made a motion to withdraw a juror and declare a mistrial "because of your Honor's question and secondly because of your Honor's criticism of me". The court denied the motion.

In this court, after citing United States v. Carmel, 7 Cir., 267 F.2d 345, counsel for defendant argues that the question asked of Miss Laurie was highly prejudicial to the defendant and, in itself, may have influenced the jury in arriving at its verdict of guilty. Reliance is placed upon Leroy v. Government of Canal Zone, 5 Cir., 81 F.2d 914, United States v. Toner, 3 Cir., 173 F.2d 140, and Gambino v. United States, 3 Cir., 108 F.2d 140.

We agree with counsel for the government that it was proper for the government to show that the witness Laurie had been convicted of a felony. This is a well-established method of impeachment, long known to the law. It was sufficiently done by the answers elicited by the questions put to the witness Laurie by the prosecuting attorney. However, the court went further and, as the government in its brief points out, we are then brought to the question of whether it was error for the judge to "expound" on this prior conviction. As further stated in the government's brief, the trial court "expatiated" on Miss Laurie's prior conviction, which she had already admitted in response to the questions of government counsel. Why the court saw fit to go into the details of the indictment to which she had pleaded guilty is not apparent. Informing the jury that she had been convicted in the same courtroom upon an indictment in which she was named with the defendant now on trial before the jury, not only did not strengthen the proof for impeachment, but it came dangerously near to misleading the jury into confusing the question of guilt of the defendant on trial with the guilt of the witness herself. If the question of the guilt of the defendant Senior were close, we would feel required to reverse the conviction and remand for a new trial. However, in view of the evidence in the record, we are of the opinion that the error of the court in this respect was not prejudicial and did not affect the jury's disposition of the case.

We have examined the three cases above mentioned relied on by defendant and find that they are all distinguishable upon the facts.

4. Defendant insists that the district court erred when it instructed the jury as follows:

"I think we all know by now that this is a so-called criminal case and the law in such cases is that the defendant comes into court presumed to be innocent and that presumption protects him *until and unless such time, if such time shall come, when you shall believe from the evidence in the case* beyond a reasonable doubt that the defendant is guilty as charged in the indictment or some count thereof."

Defendant points out that the matter which we have italicized makes this instruction erroneous and that such an instruction was condemned in Lurding v. United States, 6 Cir., 179 F.2d 419, 422. He argues that under this instruction the jurors were permitted to be convinced of defendant's guilt upon consideration of the government's proof alone, or even a part thereof, and that this instruction permits the jurors to be convinced of defendant's guilt at any stage of the trial and is calculated to shift the burden of proof to the defendant. The instruction was seasonably objected to by defendant's counsel.

In addition to this instruction, we note that the court gave other instructions, which must, of course, be considered together with the one now under criticism. The court next instructed:

"Mr. Senior, the defendant on trial, has pleaded not guilty to all of these counts,—that is to say, the first, second, fifth, sixth and seventh counts of the indictment. This plea puts the burden of proving the charges in these counts upon the government, and you cannot find the defendant guilty unless from all the evidence and under the law you believe him to have been proved guilty of the offense or offenses charged in

these counts of the indictment beyond a reasonable doubt.

\* \* \* \* \* \*

"If, after considering all of the evidence in the case you have such a doubt in your mind as would cause you or any other reasonably prudent person to pause or hesitate before acting in a grave transaction of your own life, then you have such a doubt as the law contemplates as a reasonable doubt.

\* \* \* \* \* \*

"The indictment, ladies and gentlemen, is not to be treated by you as raising any kind of presumption or creating any kind of prejudice against the defendant. The guilt of an accused is not to be inferred because the facts proven are consistent with his guilt, but, on the contrary, before there can be a verdict of guilty, you must believe from all the evidence and beyond a reasonable doubt that the facts proven are inconsistent with his innocence. If two conclusions can reasonably be drawn from the evidence, one of innocence and one of guilt, you should adopt the former."

When we consider these instructions as a whole, we have no doubt that the jury was fairly charged as to the law. United States v. Marshall, 7 Cir., 266 F.2d 92, 95.

■ 5. Defendant in this court contends that the district court erred in charging the jury in the words of the statute, 18 U.S.C.A. § 2, as it existed prior to the 1951 amendment,[1] as follows:

"Now there is another statute of the United States which reads as follows: I refer to two parts, and

"(a) reads this way:

" 'Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission is punishable as a principal.

"(b) 'Whoever causes an act to be done which if directly performed by him would be an offense against the United States is punishable as a principal.' "

Defendant argues that

"There is nothing in the evidence that indicates Elmo Senior caused any criminal act to be done. He did not cause any sale to Lewis by Kim Laurie 'to be done'. He did not make any sale to Mr. Lewis. He did not even induce or procure the commission of a sale; he did not even conceal, command, induce or procure the sale of any narcotics to Mr. Lewis."

We find that there was evidence in this case from which the jury could find that defendant was an aider and abettor. It was not error to give the aforesaid instruction. United States v. Maroy, 7 Cir., 248 F.2d 663.

6. Defendant urges that, because of several verbal clashes between his counsel and the court during the trial, the jury was prejudiced against him. While the instances to which defendant refers were unfortunate, we do not believe that they affected the result. Whether such occurrences react in the minds of observers favorably or unfavorably to a defendant on trial we are unable to determine. In any event there is no sufficient reason for extending this opinion by detailing them here.

For the reasons hereinbefore set forth, the judgment of the district court is affirmed.

Affirmed.

---

1. At the time of the offenses charged in the indictment in this case, the statute, as amended in 1951, was in effect. The language thereof was then slightly different from that quoted by the court. However the differences as applied to this case are unimportant. No point is made in regard thereto by the parties to this appeal.